The issue in the case is whether there was a violation of defendant's federal constitutional rights when the Court of Appeal reversed the granting of the motion for a new trial that had been granted by the trial judge at the State Court criminal proceeding at which the defendant was convicted of attempted robbery. And during the course of cross-examination, it turned out that the screwdriver that was the weapon was still retained by the victim. Cross-examination was deferred and put off until the victim could go home and bring the screwdriver back. He did return with the screwdriver, but then defense counsel said, well, you know, you can't do that. So the defense counsel requested it be tested for fingerprints, and cross-examination was again deferred and the witness was ordered back until after the fingerprint analysis. Well, there was a general cross-examination. The judge said he couldn't imagine what else you could have asked. So you had the screwdriver without the fingerprints. What questions would have been asked? Well, there's two things. I think there were two things going on. Not only that the examination of the fingerprints on the screwdriver, but also the defendant had been requesting that the sheriff's department that arrested him produce his closing court, and they came to court after the cross-examination was initially completed. And so there was actually two areas where he could be cross-examined on, and one of them was to just confront him with the fact that the screwdriver that he's claiming that the appellant had used against him did not have the appellant's fingerprints on it. It didn't have any fingerprints, did it? It didn't have any fingerprints, but the point was it didn't have the appellant's fingerprints on them. And secondly, when the close reference. So what do you say to him? Well, it doesn't have the appellant's fingerprints. Now what? Well, isn't that the essence of the defense of the case is to confront the victim with circumstances surrounding the crime that are inconsistent with what he's testifying in court. So he's testified that the appellant had stabbed him with the screwdriver. The screwdriver fell into the car, and he had it. And then it was. How can he explain the absence of all fingerprints on the screwdriver? What does he know about that? There are no fingerprints on the screwdriver. What are you going to say to the defendant? I mean, to the witness. To the witness. Now that you know that the screwdriver that you're claiming that the appellant was wielding during the course of the attack does not have the appellant's fingerprints on it. It doesn't have any fingerprints on it. Here's the screwdriver without fingerprints. Now what do you say? Well, you. Well, what would he say? He'd say, how do I know? Well, now you change your testimony. Now that you know that you're claiming that the appellant has wielded the screwdriver during the course of the crime, and there's no fingerprints of the appellant on it. And all you show by that evidence is that the operator was unable to discern that there were any fingerprints on the screwdriver. Well, there's two. There are any a number of reasons why that may be so. And one of them would be that the appellant didn't actually hold the screwdriver and didn't commit the crime. Nobody ever held a screwdriver. That would have to show either that nobody ever held a screwdriver or it didn't pick up fingerprints. But it is something that does not support the victim's claims, that the appellant never had an opportunity to confront this victim with it. But it doesn't prove the falsity either. It has some relevance in proving the falsity. Relevance, but it's not necessarily unequivocal proof that the screwdriver was not used in this event. But the point is that the appellant was never able to confront these new facts to the chief witness against him to see whether or not these new facts would have an effect on the witness's testimony. The witness may have, upon being confronted with these facts, changed his testimony and said, well, he didn't actually hold it in his hand. Or he may then claim or invent that the appellant was wearing a glove, and that would have changed his testimony. Or he may have retracted his part of his testimony, identifying the appellant as the person who stabbed him with the screwdriver. The point is that this is a part of the physical evidence in the case, a central part, that was never presented or confronted to the witness against him. And it's not only the screwdriver. I mean, it doesn't actually prove him completely innocent. But the test under Townsend v. Sain and the Quigg case is whether there's a probability that the newly discovered evidence would result in acquittal, which is a standard dealing with the testimony of the new witness. I think I'm jumping ahead. The other part of the cross-examination was the question becomes, well, what else would you ask him? And there was the issue of a close. The witness testified that the assailant, whom he identified as the appellant, was wearing long sleeves, and that nine days later he saw the appellant at a gas station and had the police arrest him. And he said the appellant was wearing the same clothing that he was wearing on the night of the crime. And eventually that clothing was brought into court, and it was a short-sleeved shirt. But it didn't come into court until after the cross-examination had initially been terminated and postponed. And so that was a second area where the witness could have been confronted with additional evidence. And the clothing could have been shown to him on cross-examination, and there was a possibility that then the witness would have changed his testimony or retracted some of his claims against the defendant. So these are important elements of physical evidence that had come to light during that brief postponement where the case was put over for further cross-examination. Now, a lot of – a lot was made about the fact that the public defender didn't make an offer of proof and wasn't – he was asked to make an offer of proof. And what further questions could you ask? And he didn't at that point in time. And I cited the additional citation to the Court that I provided with the gum sheets of Evidence Code Section 354, which says that an offer of proof is unnecessary when an objection is improperly sustained to a question on cross-examination. So that was a – that's one area where an offer of proof is not required. And the commentary to the Evidence Code states that that's in recognition of the fundamental nature of the Sixth Amendment constitutional right of cross-examination, that if there is an infringement or a violation of the Sixth Amendment right of cross-examination, that an offer of proof is not something that's a procedural bar of the appellant later asserting that on appeal or later asserting that here on Federal habeas. You have about three minutes left. You've got – you want to save two, and you've got one issue you haven't gotten to. The – yes, that was the newly discovered evidence of Arthur Huff. And the Respondent was arguing that the – the trial court did not qualify under the State rules as newly discovered because there was no showing that it couldn't have been discovered first. Isn't that an independent State ground? Well, the trial court made a factual finding that it was newly discovered. And the – the evidence at the hearing was that Arthur Huff was a reluctant witness and he had to testify in closed-door proceedings because he was afraid of the victim. And so I think that we have two findings, one of the trial court, which saw the witnesses and heard the evidence, and then one of the court of appeal, which is reversing it, which is the essence of our due process claim, that this reversal by the court of appeals is part and parcel of the violation of due process. Courts of appeals aren't supposed to reverse? Not if it results in a due process violation of the appellant's constitutional right. You mean because they used the wrong standard of review? They didn't recognize the Federal due process standard that if newly discovered evidence would probably result in an acquittal, it constitutes a Federal constitutional violation of the appellant's due process rights. And in this particular case, the essence of the due process violation here is such that this was a one-witness case. There was no corroboration. The witness was never confronted with the clothing. He was never confronted with a knife. And the new witness, this Arthur Huff, created a whole new theory of how the crime occurred in attacking the credibility of the prosecution witness, essentially saying that the witness was a homosexual that frequently loaned his car out, and that resulted in conflicts between the people that he was loaning his car out in exchange for sexual favors. And he also testified that the windshield on the vehicle was broken before the night of the assault. And the court of appeals decision contrary to or unreasonable application of Supreme Court authority. That the newly discovered evidence in this case is so probative in a case where it's a one-witness case and there's no corroboration, that under these circumstances the combination of the violation of the right to cross-examine and the newly discovered evidence which undermined the credibility of the prosecution witness was so great that it was unreasonable for the court of appeals to take away the granting of the motion for new trial that was granted by the trial judge who heard the evidence and saw the witnesses. Counsel, you have an unexhausted claim. How do we handle that? The petition for review that is in the supplemental excerpt of record that was filed by the Attorney General, on page 113, paragraph 3, they have three paragraphs there. The first paragraph talks about the newly discovered evidence. The second paragraph talks about the facts of the cross-examination. And then the third paragraph states the claim. It says, the question presented is whether the court of appeal denied strange his right to a fair trial and to confront and cross-examine the witnesses in violation of the Sixth and the Fourteenth Amendments. And then in the points and authorities, well, I think that's sufficient to raise the Federal claim in State court. And then they've also made the argument that it wasn't sufficiently raised in the district court. And as I was looking through the excerpt of record, the points and authorities that were filed by the Petitioner that are also in this supplemental excerpt of record at 169, page 169, cites Townsend v. Sane, which is the Federal constitutional case upon which this due process clause is made. So I – and then if you look at the district court's opinion, they never made a finding that the claims were not exhausted or they weren't properly raised in the district court. The sole issue that they were deciding – well, two issues or three issues. One, they were saying that it wasn't sufficiently a Federal issue and that it was not an unreasonable application of Federal law, even if it was. But I don't think these procedural – I don't think I got your answer to the question of why, when the court of appeals said that it was not newly discovered evidence under California law that there was no showing that the evidence could not have been found earlier, your answer to that, I think, was, well, the trial court disagreed. That's correct. So if the trial court thinks one thing and the court of appeals reverses? Well, the trial court – you'd have to look at the evidence that was presented before the trial court. And that evidence was it was a closed proceeding. No, no. That's not the question. The question was whether they could have discovered the evidence earlier. They said there's no showing that the evidence – it's not new evidence because it could have been discovered earlier. There's no showing that it could not have been discovered earlier as required under California law. But the facts at the hearing were that the witness was afraid and he was a reluctant witness. And when he finally came to court, he would only testify if the court closed the proceedings to the public. And the court of appeals said that doesn't constitute a sufficient showing that the evidence couldn't have been discovered earlier. Do you want us to reverse that? That's an unreasonable – That's an unconstitutional finding? Well, it's an unreasonable ruling that led to an unconstitutional – unconstitutional ruling or a violation of the appellant's constitutional rights. It was that ruling that ignored the appellant's constitutional rights. The other procedural question I have is you have a sealed file and you requested a sealed file here. What justification do we have to seal an appellate opinion? That was requested by the Attorney General and it was – they lodged a transcript of the closed proceeding of the witness. You have no objection to publication? I have no objection. Okay. That's all I want to know. Thank you. Thank you, counsel. Good morning, Your Honor. Deputy Attorney General Erica Jackson on behalf of the warden. Regarding the first claim of newly discovered evidence, that claim is unexhausted. As the district court found in the initial order to the people, the court, we filed a motion to dismiss on showing to exhaust and the court – Can you speak up a little bit?  I'm sorry. The first claim regarding the allegedly discovered evidence, that claim is unexhausted and was found so by the district court. In the initial order to the people, we filed a motion to dismiss on failure to exhaust grounds and the district court found that that portion of the claim was unexhausted, but the people were requested to address that claim on the merits so that that claim was found to be unexhausted by the district court. And in addition – So what do you think we should do about that claim? I think the court should deny the claim because it's unexhausted. You think what? The claim should be denied because the court cannot grant – It's abandoned, hasn't it been? I'm sorry? It's abandoned, isn't it? The unexhausted claim? If they didn't raise it – if they didn't exhaust it in the district court, don't they abandon it? I think so, yes. It was not exhausted in the – in the California Supreme Court where it needed to be exhausted. And then when it was presented to the district court, the finding that it was unexhausted means that there can't be no – no Federal relief on that claim. All right. What effect does that have on the COA? Well, I think the COA was – was broadly written such that it addressed the second claim regarding the constitutional – constitutionality of denying the new trial order. That was my understanding of the – of the order. So you think we have, what, one exhausted claim, one unexhausted claim? I do believe that's the case, Your Honor. And it also did not present a Federal question below. That's the – the district court made that finding also. So do you want us to decide both claims, or do you want us to say that we should do something else because it's unexhausted? Well, I think the court can deny the claim, as the – as the district court did. That portion of the claim can be denied because it's – Do you want us to deny it on the merits? Well, I guess the court can deny it on the merits if it's unexhausted, but it cannot grant relief on the claim. Okay. Did the Court want me to address the merits of the claim? Sure. Okay. The claim also fails on the merits because Appellant has not made a showing that the California court of appeals' decision to reverse the trial court's granting of the new trial on that ground of allegedly discovered evidence. He has not shown that that is an unreasonable application of controlling Supreme Court law. As the court of appeals found, even under California law, the claim is not really discovered because there is indication in the record that this new witness was known to both parties for 30 years. They lived in the same neighborhood. And there was indication by, I believe, the mother of Appellant that the indication of what he was going to say, the fact that he was afraid to come to trial allegedly, does not show the claim was not – that the information was newly discovered. So the court of appeals properly found that that claim was not really discovered under California law. And in addition, the standard under Supreme Court is the probability of the new evidence resulting in an acquittal. The witness's testimony was, as the court of appeals stated, confused. He could not even recall the date of the alleged incident. He had a vague recollection of those of the – of when it allegedly occurred. And his testimony would have been refuted by an unbiased witness who was the – or a witness who testified that the victim actually had two puncture wounds to his arm and a dislocated shoulder. And I believe Witness Huff – Well, that didn't – doesn't really have much to do with the basis of his testimony. He said he didn't see any injuries. But obviously, if it's a puncture to your skin under your – on your arm, you're not going to see it if someone's wearing a shirt and you don't see a shoulder injury. What he said is he didn't see any visible signs of injuries. That's true. There's nothing inconsistent about that. But his story basically was that this was a fellow who used to get into trouble by lending his car out in exchange for homosexual acts and that he'd had several experiences with people, bad experiences, as a result of incidents like this. And he took – ran into him the next day and he gave him an explanation that was consistent with that. Wouldn't that story have raised some doubt in the jury's mind about what really happened when you only have one accuser and no witnesses? It would be if the witness could have been more credible about the dates. He said he couldn't even identify the date himself of when this alleged incident occurred. It was only through the defense attorney asking the specific dates that he agreed to the dates. He still had no idea when it supposedly occurred. And assuming even if this happened on a regular basis, it couldn't have – he didn't know what date it supposedly happened. So I don't think the witness's testimony would have been that credible compared to the other witnesses, the victim himself and the corroboration by the emergency room doctor. Corroboration by whom? The emergency room doctor who confirmed that he was injured that night. Well, his testimony is not inconsistent with the fact that there was a fight over the car or a fight between the two people. The question is what it was about. Right. And had he been able to testify as to a specific date, it might have been more credible. But from what the witness testified, he did not know what date it was. It was some date, some time. He had talked to the victim about something that allegedly occurred. What I don't understand is how did Dernigan not show up and nobody went out to find him and bring him back? Isn't that kind of unusual for a witness, especially a complaining witness, to just not show up? I'm not sure exactly why the record doesn't reflect that. It was under subpoena, right? Right. And I guess what the record shows is that he was actually requested to return for the possibility of further questioning. And it seems like from the time he came back, I guess, on one occasion and brought the screwdriver and maybe assumed from that time that he didn't have to come back because no one said he had any more questions. But no one sent anybody out after him to go get him? Apparently not. And I think in the record reflects that they made that attempt. Regarding the second claim, if there's any further questions. It's not a very happy set of circumstances to send somebody to jail for 40 years on that. The only witness against him doesn't show up. And you have these odd stories, including this strange witness who claims to have known them both for 30 years and tells his story. And all you have really on the other side is Jernigan, who doesn't bother to come back when he's supposed to testify. But he did show up originally and was extensively cross-examined about the events that occurred. Maybe that's why he didn't come back. I think so. And maybe he thought he was done. Or maybe he didn't like being cross-examined extensively. I guess that's a possibility. So it's certainly not a case of which the State would be very proud. Well, we would like the witnesses to attend the trial. Yes. Pardon me? We would like the witnesses to show up for trial. That's that. Yes, that would be nice. Yes. All right. Thank you. I'll be very brief, because I think I've exceeded my time. If I just make one response. That was my fault. I asked too many questions. On the exhaustion issue, I wasn't counsel in the district court. And I've reviewed all the records and orders. And I don't see any order in my review of the record or the excerpts of record where the district court ruled that Claim 1 was not exhausted. I've looked in their brief. And on page 15 of that government's brief, they're arguing that the claim wasn't exhausted. And then they refer us to the petition for review in the California Supreme Court. And then they say the district court found it exhausted. And then they refer to an April 20, 2003, order of the district court. And it's not in the excerpt of record. I checked the docket sheet. And there is an order of April 23, 2003, on page 3 of the docket sheet. But it's setting a briefing schedule. Well, let's talk about California Supreme Court a minute. I think, as I understand their argument, is that when you were in the petition to the California Supreme Court, it doesn't mention any Federal cases, doesn't mention the Constitution, only talks about the California Court of Appeals applying the wrong standard of review to its review of the California trial court, and that no Federal question was raised in the California Supreme Court petition. As I understand it, that's their argument on exhaustion. Okay. And my response to that is that, like the 14th Amendment, there's only due process and equal protection. And he also used the words he was denied his right to a fair trial. So it was clear he wasn't arguing equal protection. He was arguing, but he didn't cite any Federal cases. It was the supplemental excerpt of record of the government, page 113. And it's the third full paragraph where he cites the 14th Amendment. You're right. He does cite the 14th Amendment. So I think that, and I wasn't able to find any ruling by the district court of lack of exhaustion. But, you know, if I'm wrong, I'm fine. But it's the right to a fair trial and to confront and cross-examine witnesses. Well, he combines them both together, fair trial and cross-examination. And then he cites the Sixth Amendment, which is cross-examination, and the 14th, which is due process. But you say by the – did you do it by requiring an offer of proof regarding continued cross-examination of the victim, who was Mr. Strain's only accuser and who failed to return to court? That's the violation that that paragraph's talking about. And that's the confrontation argument, not the due process argument. Well, it's – but the first two paragraphs, he talks about the facts, and then he cites his law in the third paragraph. It's my argument that a reading of that, he cites the 14th Amendment. So all the paragraphs together will raise it, is it? That's actually yes, Your Honor. All right. Thank you. Do you have any objection to lifting the seal? Okay. Thank you. Thank you, counsel. We have one further question for the State. Do you have any objection to lifting the seal? No. Okay. All right. Thank you both. The case just argued is submitted.
judges: Reinhardt, Beezer, Wardlaw